This is case number 4-24-0364, People v. Arian Collins. Could we have appearances from counsel, first for the appellant? My name is Maria Harrigan, representing Mr. Collins, Your Honor. All right. Thank you. And for the appellee? My name is Allison Page Brooks, and I represent the People. All right. Thank you. You may proceed, Ms. Harrigan. Excuse me, yes, Ms. Harrigan, sorry. Thank you, Your Honor. This morning, I would like to start with the first issue raised in my brief, and I'd also like to touch on issues 2, 4, and possibly 3, time permitting. In this case, the state charged my client with being accountable for his co-defendant's actions in shooting Darren Miller. The evidence was closely balanced, and the state's evidence supporting accountability was largely circumstantial. Against this backdrop, Mr. Collins was deprived of his due process rights to a fair trial by the admission of irrelevant, unduly prejudicial evidence, combined with the ineffective assistance of counsel, which allowed, by his ineffectiveness, he allowed other prejudicial evidence in. First, the evidence of the Snapchat videos and the Google search for bum stocks a day of the offense were not relevant to this offense and were highly prejudicial. Neither the video or the search were relevant to whether Arian was accountable for the shooting that caused Darren Miller's injuries, and it was redundant with other evidence that the jury already heard. Arian admitted that he was aware that Dorian, his friend, kept guns in the basement. He admitted handling the guns that night. So the video showed no light, shed no light on this, because this evidence is already before the jury, and no light on whether he knew this robbery was being planned. The Google search is even less relevant, where there's no allegation that either of the guns that were alleged to have been involved in this offense were augmented. The state argues that it was relevant to show that Arian owned one of these guns, because the search was for a 9mm weapon, and one of the weapons alleged to be involved was a 9mm. However, there's no indication that Arian was actually armed at the time of the offense. The state witness saw another person shoot his stepfather, and Arian ran out of the house at that time. The only evidence that this shows is that he was curious about the augmentation of weapons. And again, he was also charged by accountability, so the state did not need to prove that he had a gun in his own hand. On the other hand, the prejudice of all this evidence was overwhelming and outweighed any possible probative value. The video, again, was inflammatory. There's a picture of Bastille in my brief. It showed Arian holding two guns in a threatening manner, and in the background in the video, you could be heard, something could be heard saying that these guns smoked somebody. It did only serve to portray Arian as a dangerous person enamored of weapons. The search for a bomb stock was even more prejudicial. Counsel, would you agree that I understand that you are arguing these things in isolation. In reality, don't we look at them all in conjunction with each other and the rest of the evidence in the case in determining the level of either prejudice or probative value? Yes, your honors, and it is my contention that there's a theme here in at least the issues one, two, and four, where the evidence that was brought in by the state was not proper evidence and in addition to being prejudicial in themselves, unduly prejudicial, the evidence here was actually close and depended on Mr. Collins's credibility. He actually testified in this case. He testified consistent with what he said in his second interrogation, and so the jury actually was charged with determining whether to believe him or not. So all this evidence portraying him as this thug who had this prior conviction for weapons, which is my issue two, another weapons conviction, which the state argued shows his putting himself over society, which is more like a propensity argument. I'm going to commit felonies rather than an impeachment, what the limiting instruction is for prior convictions. And then in my fourth issue, the state introduced the opinion of a uniformed officer that Mr. Collins was lying and therefore guilty. This was the ultimate jury question that this evidence infringed upon. One of the two guns, I'm sorry. One of the two guns in the picture was a two-toned semi-automatic handgun, correct? Correct. And the evidence was that that picture of him would have been within an hour or so in relation to the shooting?  It was that evening, that night before, yes, the night of the shooting before it happened, yes. And the evidence is that the shooter used a two-toned semi-automatic handgun, correct? Correct. Okay.  But that, but Arian, in both his statement to the police and his testimony, said that Dorian had that gun, recognized the gun when it came through the door when he was in the apartment, and admitted to holding those guns. So the admission- Well, but there's no requirement, there's no requirement that the jury has to believe him based on his testimony alone, is there? There's no requirement of that, but because his credibility was important, the fact that he admitted to knowing about and holding these guns makes the introduction of the video serve no purpose other than to portray him as this dangerous thug, which doesn't shed any more light on the fact that he knew that these guns were there and he knew they were in the  I would assume you and I would both agree that it's a very common defense tactic to admit certain things about the offense that you probably know are more than likely to be established and just deny other aspects of the offense. So the fact that he admits portions of the offense doesn't then invalidate the other physical evidence that they have, including his own Snapchat pictures showing him holding a gun within an hour of the shooting that matches the description of the gun being used, does it? But the video doesn't shed any more light on whether he knew about the robbery plan. It doesn't have to. You're arguing as if it must establish each element of the offense or somehow that every aspect of the video has to go to every aspect of the case. And that's not the case at all. It's just simply that they're able to show that there's a connection between this guy, a gun that matches the description and his possession of that gun within an hour of the shooting. That's it. But that already came out with other evidence. And so the fact that this video just doesn't allow one piece of evidence in that regard, if the video, if the video is, if it's prejudice, probative, um, if it's president prejudices more than the probative outweighs the probative value, then it should be prohibited under the statute. The trial court makes and the trial, I believe the trial court abuse discretion to making that determination. And, and, and it was just one component of why this trial was unfair to Mr. Collins. Go ahead. Thank you. It's also, if I could just add, as we're talking about this, I think it's also relevant to establishing that the defendant knew if he didn't have the gun that Wheeler had the gun when they left. I believe at one point he said, you know, he really didn't know that they were going to commit a robbery. Well, you know, if they're taking guns and I think the, the video certainly can be relevant to that and to the whole issue of, um, his accountability for that, whether he was part of a common scheme, um, and, and whether he knew he, he kind of said, oh, you know, he, I think he minimized what he knew and thought they were doing something hinky versus planning a robbery. Well, I think this, uh, certainly the trial court could have, um, thought about the fact that, uh, this would be probative of his knowledge of what was going to happen. But I don't, I disagree that he's holding a video, a gun in a video that he admitted to doing. I don't understand how that, that doesn't shed any light on whether he knew that Dorian took the gun with them when they left that night. That doesn't, that's not connected. It shows that he knows there was a gun in the house and he always knew there was a gun in the house. But it doesn't connect any, him to the fact that he knew a gun was in that car. Certainly the inference can be made from that. But the inference can be made from his testimony that I knew there was a gun here and I handled it. There is that little tidbit of, and it was used to smoke somebody. That was, and that's what makes this completely highly prejudicial. And that's what makes it completely relevant. It was just used to smoke somebody. Well, it was before the shooting. It doesn't, the fact that the jury heard this, let them make a decision on my client's credibility on an unduly prejudicial evidence with somebody holding two guns. It doesn't show that he knew guns were going to this house. It doesn't show that he knew that guns were going to this house. It doesn't, it doesn't shed any light on that. It doesn't have to. It has to be relevant. You're arguing from such a broad range. You're contending that this piece of evidence must establish a whole bunch of different components of the case and it doesn't, it just has to be relevant in some fashion. That's not what I'm saying. I'm saying it's not relevant. The definition of relevant is to prove and to help, to make something more likely to exist than otherwise. This does not do that in light of the other evidence. You have to look at the evidence as a whole. Okay. That's, that's really my whole point. You've been arguing in isolation, so we need to look at everything as a whole. Go right ahead. If you look at everything as a whole, the evidence was closely balanced. There's no confession here. There's no physical evidence tying Arion to this offense. There's no indication that he held a weapon in that house. The state's witness only saw the shooter hold the weapon, and there was an explanation provided for everything that Arion, Darian, and Marcus Morris did that night. This is exactly what makes it a closed case, that there are explanations on both sides. My client testified. The jury had to make a judgment as to his credibility, and the thumb on the scale was Bradbury's testimony that, in my long work as a police officer, I think that this man is lying. This was the jury's question. The jury itself struggled with this. It came back with a question about, what does accountability mean? Does it have to be pre-planned? Can it be in the heat of the moment? So when you look at all the evidence, it's close, and you have these pieces of evidence that came in that were unduly prejudicial, that could have swung the jury in favor of a conviction unfairly in our contention in this case. I think the defense counsel contributed to this when he didn't try to suppress the first part of the first interrogation that clearly came out after an invocation of defendants' right to silence, the Fifth Amendment right to silence. There's no condition on his right to silence. He first asked what the evidence was when he wasn't given an answer on that. It went on. Then he just said, I don't want to talk anymore. Bradbury acknowledged that, but then he said he kept asking questions. This is exactly what officers are not supposed to do. So if your honors have no other questions, I believe that the theme- Can I ask one more question, please?  What about the argument that trial counsel, as a matter of trial strategy, was looking at the statements from the perspective of the badgering by the police officers, the continued denial by the defendant, the way in which they were asking their questions and their continuation of asking questions when he said he didn't really want to talk to him until he saw some of the evidence, and the fact that he ultimately never says anything in there affirmatively that establishes any level of guilt? Now, they do use some of the lies against him with other evidence later. But what about the argument that it was defense counsel's decision that I want the jury to see the nature of the questioning and the fact that my client continued to deny either knowing about or being involved in this offense? I don't think that's a valid strategy when the statements that came out were undermining his credibility, the phone call, the beating the case, the things he said after his invocation of the right to silence. Yes, they weren't direct admissions, but the states certainly utilize them in their case to make a point that the defendant was lying and not credible, which again, was the key in this case was the could the testimony believe we I don't have a lot of clients that testify. The jury had to judge this person's testimony. And there was a lot of improper evidence that came in that tip the scales unfairly against my client deprived him of due process. Thank you. So if your honors have no further questions, we request that for the reason set forth in my brief and argued here and today that you at minimum reverse this conviction and remand this cause for a new trial. Thank you. All right. Thank you, Miss Harrigan. You'll have time and rebuttal. Ms. Brooks. Thank you, your honors. May it please the court and counsel defendants. One of his primary arguments is his belief that the evidence was closely balanced, but it was the state's position that the evidence of accountability, although it was circumstantial in many respects, was almost overwhelming. It the what the defendant relies on to make it closely balanced is you're saying you have an overwhelming circumstantial accountability case. Yes, your honor. Okay. And one of the things that the defendants rely on in in his claim that his explanations for his, quote, hinky situation were things that were just patently incredible. And so, like the idea that somehow when so the fact that the fact that the police officer gives his opinion that he's a liar probably has more impact. Well, I think because it was sort of obvious to the jury already, the defendant was lying. It's not a it's not a matter of just being obvious to the jury. It's the cop who gets up and says, yeah, it's my opinion. He was lying and he he knew this and he knew that. But a competent defense attorney who knows essentially being in part of the trial, it could be a competent defense attorney of a position that no, the jury isn't going to buy that the defendant's explanations for these situations are reasonable. So therefore, when the cop is getting on the stands saying, I have all this experience and then hits him with essentially the defense use of that officer's experience to say, yes. But in your experience, does anybody who's going to take part of a robbery send a message, a text message to the victim saying, hi, this is my name, and then show up at the door with no covering on his face? I mean, so that's essentially the defense's strongest argument here is how could the defendant have intended to to be part of a robbery when he's telling the victim who he is and shows up with no covering and and shows his face at the door and and to get the officer to admit that basically that that he hasn't heard of a similar type of robbery type situation in his long years of experience? I mean, that's the capitalization on that officer's opinion. I find fascinating, counsel, because I can't count the number of cases I either prosecuted or defended where it was very common to have a person known to the person being victimized, to have somebody that they know come to the door first to let the assailants in. So the fact that this guy says all these years of experience, he's never seen anything like this seems rather questionable to me by itself. Well, the state's position is that, yes, the defendant's known to the victim as a way of getting the victim to open the door. And that was kind of necessary to set up this idea. We're going to come over and buy some cannabis. And and they have this prior sort of business relationship in selling and buying cannabis to them. So that is their foot in the door. And that's why the defendant had to show up. He had a covering on his face. They're not going to open the door. So he has to present himself there to open to get them defended, to open the door. But you have a statement by a police officer that in his opinion. He's never heard of a crime being committed like this. Well, that's what relevance is that? What's the admissibility of that? Since when do the cops get to explain what kinds of crimes they think are reasonable or unreasonable? Well, that's the point is, is they're not supposed to be able to provide the opinion of like the defendant's credibility. But when the defense attorney knows that the jury in their experience and their view of the case is is understanding that this isn't just hinky. This is like every every card stacked against the defendant in this situation, which I'll get to. But there's little downside in letting the cop get on the stand and say he believes the defendant was lying because the jury is going to be a reasonable, competent defense attorney is going to think, yeah, the jury is going to believe the defendant is lying here. So what's the risk? Then so let's get something out of this by them putting the officer and their experience on the stand and then try to say, Ms. Brooks, it wasn't that Bradbury just gave an opinion that the defendant was lying. He also gave his opinion that the defendant went to McMurray's apartment to commit a robbery. You know, in essence, you've got Bradbury on the stand giving a closing argument for the prosecution. I just don't understand those the combination of those two things, how that's not a objectionable and be prejudicial in what is arguably a closely balanced case. Well, your honor, it would be objectionable and that that was at least the defendant has an argument that counsel should objected. But then it gets back to trial strategy. And this is the type of issue that might have to go to a post conviction so that the defendants reasoning, the defense counsel's reasoning could be explored. Because here under Strickland's, the defense attorneys, we can't second guess. We have to give a lot of deference to their judgment and experience. And when they make a decision that that this is the type of situation where an omission like here to fail to object, which might be unreasonable in another case, could be brilliant in another case. I mean, that's what the idea that just because here it could be objectionable doesn't mean that a a competent attorney has to object in every situation when they might realize that, hey, I can score some points off this officer in his years of experience by getting him to admit certain things that favor the defense, when particularly what is conceded is something that the attorney very well could reasonably decide the jury was going to rule against the defendant on anyway. So what's the downside in that situation? I'm not saying that it wasn't objectionable. I'm just saying that some competent attorney could refrain from objecting in the interest of gaining some sort of tactical advantage out of this officer's testimony in other respects. And what do you contend was the tactical advantage here? That to get the officer to admit in their experience that the defendant wouldn't give their name and go up to a robbery by showing their face, that that was something they could get the officer to admit would damage the state's case. And what about the fact that we have a police officer testifying to this, not just a lay person, but a police officer testifying, not as an expert, somebody who was an expert in psychology or human behavior, but testifying, wouldn't the jury give more credence to the testimony of a police officer, even in the face of what the supposed strategy was? I'm not sure that I guess I'm not following this argument. Well, the trial strategy just has to be viewed from the position of the defense attorney, giving due deference to their judgments without hindsight. So essentially, if a competent attorney, any competent attorney could decide that there is something to be gained by letting this officer testify in this way, then you can't, the courts cannot second guess that judgment as long as some competent attorney could decide that in a particular situation. I'm sorry, I hear what you're saying. There are certain roles, though, Justice Harris indicated that perhaps Detective Bradbury was giving the closing argument for the state. It occurs to me that in essence, he usurped the role of the jury here as well. I mean, there are certain principles here that I think need to be looked at carefully. So anyway. Well, the defendant would have to make them like a second pronged plain error argument or their first pronged plain error argument, which would fail because of the weight of the evidence. But essentially, they'd have to show ineffective assistance of counsel and meet the Strickland prejudice standard, which I would get to after my trial strategy argument, that they would also have to prove prejudice. They have to prove a reasonable probability that had the defense objected and this officer never gave this opinion, whether that there'd be a reasonable probability the defendant would have been acquitted of these offenses. And that's something that given the strength of the accountability evidence that the defendant is unable to meet their burden of persuasion on the prejudice element. And just to get the idea of part of the very significant parts of the accountability evidence is now that the defendant know that there were guns coming or at least one gun coming with the parties. That Wheeler and Pricewood are openly talking about needing to hit a lick, which is a robbery and that they saw a video of James Fulham like flashing many, many like bills. And so they knew that he was a worthy target of a robbery. Also, for the reason that they deemed him to be soft and didn't believe he would defend himself. And again, when you rob a drug dealer, it's not necessarily to hide your face as much because or withhold your name, because the idea is, are they going to call police if they got robbed of these bills that they were flashing in a video because they would have to essentially admit that they were a drug dealer. And so, therefore, they may not call the police if they get robbed. So that's what made this person pulling him an ideal target in their respects. And the idea that the parking spot defendant himself admitted was good for hitting a lick. They had to park across a creek or something. They didn't go into the willows. They parked somewhere else and had to walk all the way there. And the offered reason for this was that Wheeler was on house arrest. Well, of course, he was only one of three people coming and at price had already gotten marijuana or cannabis from this particular seller and said it was good. So the idea that somehow Wheeler is going to have to violate his own house arrest because he doesn't take the word of his own friend, Price, who had already just been there, bought marijuana and said it was good. So he's going to have to go out himself. This sounds like a great closing argument for the state, but what does it have to do with the issues raised by appellate counsel? Because there is no reasonable probability the jury in knowing all these facts about the defendant and what he knew about this supposedly hinky situation is what the words they used that they would have. It was so obvious that this was a robbery because then you get to the point where not only do they have to cross the creek and get there and Wheeler didn't even need to be there anyway. And then the purpose of the argument that then the cop's opinion that the defendant knew about all this when he's being charged with accountability and all of the evidence against him is circumstantial really didn't matter much. Is that what you're saying? Yes, it doesn't matter because the defendant, he knows Wheeler looks into the apartment because it's obvious that Wheeler is looking for this cash that Pulliam was flashing in the video. And once he satisfies himself that the cash is there, then they go, Wheeler and Price go and stand off in the side of the apartment in the dark while the defendant goes on the  And then the biggest thing that the defendant himself does in all this is he tells Pulliam to hold on when Pulliam is trying to shut the door because Pulliam realizes now at this point that there's two guys standing off in the dark probably with guns are going to rob him. And so he tries to shut the door and the defendant says, hold on. And now here's the point. His whole reason for trying to stop Pulliam from closing the doors in his mind, I guess his position is, well, no, he's not trying to facilitate the robbery. He said they were just going to go buy a gram and see if it was good. Well, I see Price just bought marijuana from this person and said it was good. So the whole idea that Wheeler had to come along and they were going to have to buy one gram and then smoke it and see if it was good and then come back and buy more. That was the whole reason for the defendant supposedly trying to stop Pulliam from closing the door. And because it was obvious at that point that they're standing off the side with guns in the dark while he's trying to get the guy to open the door, Pulliam to open the door because he's trying to allow them to rush in and rob the place of the money that was flashed in the video. I'd like to take a few minutes and talk about the statements to the police while he was being interrogated. Yes, and just the last two very quick elements was that defendant then fled the scene with his two accomplices and then lied to the police. So, I mean, all the factors of accountability here were overwhelming. Respect to the defendant's alleged assertion of the right to silence. Is that your question? I just thought you might want to argue some of the other issues. Yes, yes, I am with respect to the this is more like the record case where the defendant's supposed implication of right to silence is actually conditional because he's sitting there insisting on seeing the evidence. And then so it's like if he says, I want to see the evidence and I'm saying anything until then. So that's essentially just saying I have a condition on my cooperation and that's not equivocal, clear and unambiguous assertion of the right to silence under the record case. So that's why the evidence would not have been subject to suppression. With respect to the argument that the prosecution made with respect to the defendant's prior conviction. Let's go back. I'm sorry. Go ahead. No, I was I think we're probably going to the same place. There were two times that right that the defendant invoked his right to silence. Um, so once maybe it had to do with the evidence, but about 30 minutes into the interview. Um, there, if we look at what the defendant said, he said, I don't feel like talking right now. That wasn't conditioned on seeing any evidence. Then it wasn't conditioned on anything, was it? So what was what was not clear? I mean, this was clear, unambiguous and unequivocal. And the police kept talking to him. Okay, not only that, as soon as he says that, then the officer says, but I want to talk to you. Okay, I wasn't sure exactly what point of the interview at 1332 55. He says, I would like to see those today, then indicated he did not feel like talking about anything then. Right. And then you go to about 22 minutes, 22 minutes after that. But then, well, totally a total of about 30 minutes, I think, into the video. Okay, I'm not sure if I briefed that particular thing. I don't sure if the defendant argued that particular comment. 3130 to be exact. 3130 I don't see that offhand, so I really can't respond to that at the moment. I'm not aware of the second invocation of the right to silence. I'm not sure if I briefed that part of particular statement or not. Okay, because at that point is when he said Bradbury talks to him, says he's going to look like a liar. Defendant says that he he can beat it. Bradbury tells him they're saying that you did it too. Defendant responds that, yeah, that's what they're saying. And says something to the effect that maybe it didn't happen. And then Bradbury again asked him to tell him what happens. And that's when defendant says, look, I don't feel like talking right now. Bradbury says, well, you don't have to talk, but I want to talk to you. Now, why isn't that an effort to overcome the defendant's indication of the right to silence? Well, I'm not sure that it's saying I don't feel like talking because feeling like talking is not necessarily a clear and unambiguous invocation of the right to silence. To say I like I'm done talking is different from saying I don't feel like talking. And so I'm not sure that the word feel there, if there's any case law cited by the defense that would show that that's a clear and unambiguous invocation of the right to silence. I'm not sure if that particular statement was briefed or not. I don't remember specifically. I don't think I mentioned that particular statement in my brief. On video, I understand it's in the video, but I haven't. I'm not sure if it was briefed. So that's why I don't have a complete opportunity to respond to that particular argument at this time. But I would just say that if the defense says he doesn't feel like talking, especially in the indication of in the context of him wanting to see all the evidence, I'm not sure that saying talking right now is an unambiguous desire to terminate the interrogation entirely particularly when he's been insistent that he wants to see the evidence. Saying that using the word feel and now doesn't seem like that's a unambiguous intention to terminate the interview completely. So at least that would be my response to that. In my last couple of minutes, I'm going to move on to a couple of the other issues. Go right ahead. Thank you, Your Honor. With respect to the prior conviction, the prosecutor argued that this affected his credibility, which is proper use. There was a limiting instruction given. So there's no use of argument propensity here. And this was simply arguing that because the prosecutor is sort of explaining why a person with a prior conviction has, why it affects their credibility and believability as a witness. And that's proper. So that's why there's no error with that. With respect to the- Excuse me. But here, this was the trial court weighed this per Montgomery. This offense, the prior offense was a very similar offense, unlawful possession of a weapon. So similarity can sometimes be an important reason not to allow an offense to be used to impeach. So why wasn't that the case here? Because it's not an abuse of discretion for a court to admit even the same offense like in another burglary case, because the similarity itself is not, does not require the trial court to exercise the discretion a different way. So this wasn't prejudicial. Well, in balancing the credit, the defendant is testifying here is a very relevant that his prior conviction. So, I mean, essentially in a balancing that's within the trial court's discretion to balance this despite the similarity of the charge, the prior offense. So that's why a defendant testifies in a burglary case can still be impeached with a prior burglary conviction. And that's not an abuse of discretion. Well, we're not talking about any case. I understand the principles here, having sat in a trial court and done this, but I'm talking about in this particular situation where the we're talking about a very similar offense. Well, it is still not required to exclude it on the basis of similarity. That's why it's not an abuse of discretion. When it's in the context of an accountability case where the police officer is actually going to render an opinion as to whether he actually knew about the robbery or not. I don't understand the question in terms of the fact that the defendant is impeached with respect to that. It's okay. Go ahead. Okay, just before my remaining seconds, I just want to say that the idea of smoking somebody was not in the Snapchat video. May I just have leave to conclude very briefly? It was not in the Snapchat video. It was actually what the defendant told the police about the Snapchat video that the gun in the Snapchat video was used to smoke someone. I don't believe that the word smoke was actually in the video itself. And that's the last point I wanted to make. So, which urge this court to affirm. Thank you, Your Honors. Okay, thank you, Ms. Brooks. Ms. Harrigan, rebuttal argument? Yes, Your Honor, just a few points. As far as the fourth issue in the context of whether this is overwhelming evidence or not that the state had, the defense isn't saying the state didn't have any evidence. But the fact that now that the prosecution is saying that, oh, this was so obvious. At the time the jury was making this decision, my client was presumed innocent. The jury had to make a credibility determination based on what my client's testimony was. Really, that was the only determination. Because the state's witnesses indicated that somebody came in through the door and shot the stepfather. That was basically the eyewitness testimony in this case. So the credibility determination was all based on my client's testimony. Yet you have the officer coming in here with a uniform on saying, yes, I think he was lying, therefore he was guilty. The state makes an argument that this was some kind of strategy to let him testify to that. It is our contention that the defense counsel could have objected to that opinion and still impeach the officer based on the fact that he testified years of experience with these other things. Have you ever seen a robbery like this where someone doesn't cover their face? They're not mutually exclusive. Defense attorney could have done both. There is no competent attorney that would think it was a good idea to have an officer testify to the jury that this person is a liar when the whole case depends on his credibility. We don't need a post-conviction petition for that. As far as the suppression issue, there were two invocations of silence. The second one was clearly disconnected from any demand to see the evidence. The first one, it's our contention, even was too. The record case, the defendant actually says, I will talk to you off the record. He made an if, a condition based of when he'll talk. This didn't happen here. My client twice said, I don't feel like talking. The officer acknowledged that he didn't have to talk, but he wanted to talk to him. So therefore, it was an invocation of right to silence. And finally, with the prior conviction, the similarity is a factor in making a determination when you have a case like this, which is accountability, wholly dependent on credibility to keep throwing mud at the defendant, put your thumb on the scale, completely deprived him of this due process rights. If the state's evidence was so strong, why did they introduce the improper evidence? If your honors have no questions, we respectfully request that this commission be reversed and a new trial be granted for my client. All right. Thank you, counsel. Thank you both. The court will take the matter under advisement and will issue a written decision.